UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTHONY RUGGIERO,

Plaintiff,

v.                                                        23-CV-229 (JLS)

DONALD D. ROGERS, Correction
Officer, Attica C.F.; MARK E.
CARROW, Correction Officer, Attica
C.F.; JOSEPH H. NOETH,
Superintendent, Attica C.F.; LENA
RUSSI, Deputy Superintendent for
Programs, Attica C.F.; THEA HALE,
Nurse 2, Attica C.F.; RICHARD
TENBRICK, Dentist 2, Attica C.F.; T.M.
FINNERTY, NYSDOCCS,
Commissioner's Hearing Officer;
JAMES A. O'GORMAN, Deputy
Commissioner, NYSDOCCS;
ANTHONY J. ANNUCCI,
Commissioner, NYSDOCCS;
DANIELLE DILL, Director, NYS OMH,

Defendants.[1]

_____

## DECISION AND ORDER

*Pro se* plaintiff Anthony Ruggiero, who was a prisoner confined at the

Wallkill Correctional Facility when he filed this action, seeks relief under

42 U.S.C. § 1983.  Dkt. 1.  He filed a complaint alleging that Defendants subjected

him to excessive force and unconstitutional conditions of confinement, conducted an

_____

[1] Consistent with the amended complaint, the Clerk of Court is directed to amend
the caption as set forth above.

unconstitutional search and seizure, violated his due process rights, and retaliated against him for filing grievances during his confinement at the Attica Correctional Facility. *Id.* Ruggiero further alleged that the Defendants were deliberately indifferent to his serious medical and dental needs during his confinement at Attica Correctional Facility, Orleans Correctional Facility, Lakeview Correctional Facility, Great Meadow Correctional Facility, and Upstate Correctional Facility. *Id.* Ruggiero also filed an application to proceed *in forma pauperis* ("IFP"), with a signed authorization. Dkt. 2.

The Court severed and transferred the claims arising from Upstate Correctional Facility, granted Ruggiero's request to proceed IFP, and screened his complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b). Dkt. 5 (the" initial screening order"). In the initial screening order, the Court concluded that the following claims could proceed to service: (1) excessive force claim against Defendants Rogers and Carrow; (2) unconstitutional body-cavity search claim against Defendants Olszewski, Asimenios, Reinhardt, Pezdek, and Greean; (3) deliberate indifference to serious medical needs claim against Defendant Hale; (4) deliberate indifference to serious dental needs claim against Defendant Tenbrick; and (5) due process claim against Defendant Finnerty. *Id.* at 53. Ruggiero's remaining claims were dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), unless he filed an amended complaint in which he cured the pleading deficiencies identified by the Court. *Id.* at 53–54.

2

Thereafter, Ruggiero filed a motion requesting that the Court reconsider his claims against Olszewski, Asimenios, Reinhardt, Pezdek, and Greean in the complaint as being asserted against O'Gorman, Dill, Russi, and Jane/John Doe OMH Clinician. Dkt. 6, at 3.[2] Because Ruggiero no longer names Olszewski, Asimenios, Reinhardt, Pezdek, and Greean in the amended complaint, *see* Dkt. 7, and now asserts his claims in the amended complaint against O'Gorman, Dill, Russi, and Annucci,[3] the Court denies the motion to reconsider as unnecessary.[4]

The Court screens Ruggiero's amended complaint (Dkt. 7), pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b). For the reasons below, the following claims will proceed to service: (1) excessive force claim against Rogers and Carrow;

---

[2] Ruggiero explains that he always intended this body-cavity search claim to be asserted against O'Gorman, Dill, Jane/John Doe OMH Clinician, and Russi. *See* Dkt. 6 ¶ 4 ("The Court has 'assigned' and 'pinned' my claims against defendants O'Gorman, Dill, Jane/John Doe OMH Clinician and Russi, on defendants Olszewski, Asimenios, Reinhardt, Pezdek, and Greean." (emphasis omitted)). He notes that Olszewski, Asimenios, Reinhardt, Pezdek, and Greean remain "as non-defendants, carrying out the directives and actions of the unconstitutional policy . . . promulgated by defendants O'Gorman, Dill, Jane/John Doe OMH Clinician and Russi." *Id.* ¶ 6.

[3] The amended complaint does not name Jane/John Doe OMH Clinician as a Defendant and instead includes Annucci with this group of Defendants. *See* Dkt. 7, at 6, 8, 10.

[4] Ruggiero's motion to reconsider also voluntarily dismisses Olszewski, Asimenios, Reinhardt, Pezdek, and Greean from the action. Dkt. 6 at 3-4. Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff to "dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." In any event, Ruggiero does not name these Defendants in the amended complaint, which is now the operative pleading. Dkt. 7.

(2) deliberate indifference to serious medical needs claim against Hale;

(3) deliberate indifference to serious dental needs claim against Defendant

Tenbrick; (4) due process violation against Finnerty and Hale; (5) due process

violation against Annucci, O'Gorman, Dill, and Russi; and (6) unreasonable search

and sexual assault claims against Noeth. Ruggiero's Eighth Amendment conditions

of confinement claim arising from the strip cell is dismissed without prejudice; all

other remaining claims are dismissed with prejudice under 28 U.S.C.

§§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## DISCUSSION[5]

### I.   LEGAL STANDARDS

A court shall dismiss a complaint in a civil action in which a prisoner seeks

redress from a governmental entity, or an officer or employee of a governmental

entity, if the court determines the action "(1) is frivolous, malicious, or fails to state

a claim upon which relief may be granted; or (2) seeks monetary relief from a

defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b)(1)–(2); *see* 28

U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to

be heard prior to dismissal "unless the court can rule out any possibility, however

unlikely it might be, that an amended complaint would succeed in stating a claim."

*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (quoting *Gomez v. USAA Fed.*

---

[5] Ruggiero's familiarity with the initial screening order is presumed and the Court
will repeat the initial screening order here only as necessary.

4

*Savs. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)). But permission to amend "is not required where the plaintiff has already been afforded the opportunity to amend." *Bivona v. McLean*, No. 9-19-CV-0303 (MAD) (TWD), 2019 WL 2250553, at *5 (N.D.N.Y. May 24, 2019) (citing cases); *Cancel v. N.Y. City Hum. Res. Admin./Dep't of Soc. Servs.*, 527 F. App'x 42, 44 (2d Cir. 2013) ("[T]he district court had already permitted [the plaintiff] to amend his complaint once, and nothing in his amended complaint suggested that he would be able to state a valid . . . claim if he were granted leave to amend a second time. Therefore, granting [the plaintiff] leave to amend his amended complaint as to these claims would have been futile."); *Cato v. Zweller*, No. 6:21-CV-6207 EAW, 2023 WL 8653857, at *2 (W.D.N.Y. Dec. 14, 2023) (dismissing the amended complaint with prejudice because it "does not remedy any of the pleading deficiencies identified in the Screening Order").

## II.    CLAIMS DEEMED ABANDONED

"It is well established that an amended complaint ordinarily supersedes the original[] and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). In general, "[a]ll causes of action alleged in an original complaint [that] are not alleged in an amended complaint are waived." *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (citation modified), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). But in *Austin*, the Second Circuit declined to apply this general rule to *pro se* litigants, reasoning that they "may not fully understand the superseding effect of the second pleading,

5

even when it is allowed much less when it is disallowed." *Id.* "Ultimately," the Circuit noted, "the question of abandonment is one of intent." *Id.*

Here, however, the initial screening order informed Ruggiero that the amended complaint would supersede the original complaint and that he must "include allegations against each Defendant—including the allegations related to the claims that the Court concluded may proceed to service—so that the amended complaint stands alone as the only complaint to be answered in this action." Dkt. 5, at 53. The Court, therefore, concludes that Ruggiero intended to abandon the following claims.

### A.   Excessive Force: Spit Net

Ruggiero's original complaint asserted an excessive force claim for the malicious use of a spit net. Dkt. 1, at 21–24. The initial screening order informed Ruggiero that his allegations regarding Defendants Enser and Coburn's use of a spit net did not allege either element of an excessive force claim. Dkt. 5, at 20–21.

Ruggiero's amended complaint does not name Enser or Coburn as Defendants and omits all allegations regarding the use of the spit net. Therefore, the Court deems this claim abandoned. Ruggiero's Eighth Amendment excessive force claim with respect to use of a spit net is dismissed, and Defendants Enser and Coburn will be terminated from the action.

### B.   Sexual Assault Against the Voluntarily Dismissed Defendants

Ruggiero's original complaint asserted a sexual assault claim against Noeth, Olszewski, Reinhardt, Pezdek, Asimenios, and Greean based on the allegations that

6

his clothing was cut off, and Asimenios palpated his anus. *See* Dkt. 1, at 26–28; Dkt. 5, at 15, 23–25. The initial screening order informed Ruggiero that his complaint did not adequately allege the subjective component of an Eighth Amendment violation with respect to his allegations of sexual assault. Dkt. 5, at 24–25.

Ruggiero voluntarily dismissed all claims against Olszewski, Reinhardt, Pezdek, Asimenios, and Greean, *see* Dkt. 6, and his amended complaint does not assert any claims against these Defendants, *see* Dkt. 7. Accordingly, Ruggiero's Eighth Amendment sexual assault claim is dismissed as to Olszewski, Reinhardt, Pezdek, Asimenios, and Greean.[6]

### C.   Unreasonable Search Against the Voluntarily Dismissed Defendants

The initial screening order concluded that Ruggiero sufficiently alleged that the body-cavity search violated the Fourth Amendment, and that this claim would proceed to service upon Defendants Olszewski, Asimenios, Reinhardt, Pezdek, and Greean. Dkt. 5, at 28. Ruggiero voluntarily dismissed all claims against Olszewski, Reinhardt, Pezdek, Asimenios, and Greean, *see* Dkt. 6, and his amended complaint does not assert claims against these Defendants, *see* Dkt. 7. Accordingly, Ruggiero's Fourth Amendment search and seizure claim is dismissed as to Olszewski, Reinhardt, Pezdek, Asimenios, and Greean.

---

[6] Noeth remains a Defendant in the amended complaint. The claims against him are addressed below.

7

## D.     Inadequate Medical Care: Defendant Oak

The initial screening order concluded that Ruggiero's allegations were too conclusory to sufficiently allege that Oak had the requisite culpable state of mind to satisfy the test for deliberate indifference. Dkt. 5 at 31–32. Ruggiero does not name Oak as a Defendant in his amended complaint and does not make any allegations indicating that he intends to pursue a claim against Oak. *See* Dkt. 7. Accordingly, the Eighth Amendment deliberate indifference claim against Oak is deemed abandoned and is dismissed.

## E.     Inadequate Medical Care: Defendants Williams and White

The initial screening order concluded that Ruggiero's complaint did not plausibly allege Defendants Williams's and White's deliberate indifference arising from the failure to prescribe a front-cuff order during his SHU confinement. Dkt. 5, at 33–34. Ruggiero does not name Williams and White in his amended complaint and does not make any allegations indicating that he intends to pursue a claim against these Defendants. *See* Dkt. 7. Accordingly, Ruggiero's Eighth Amendment deliberate indifference claim against Williams and White is deemed abandoned and is dismissed.

## F.     Inadequate Medical Care: Exposure to COVID-19

In its initial screening order, the Court concluded that Ruggiero's allegations regarding the failure of Annucci, Fitzpatrick, Clinton, Sebouhian, the Movement Director, and the Movement Officer to take appropriate actions to prevent him from contracting the COVID-19 virus were insufficient to state a claim. Dkt. 5, at 34–37.

8

Ruggiero does not name Fitzpatrick, Clinton, Sebouhian, the Movement Director, or the Movement Officer as Defendants in his amended complaint. *See* Dkt. 7, at 3–4. He also does not include any allegations regarding COVID-19 or the impact of the pandemic on his health. *See* Dkt. 7. Accordingly, Ruggiero's Eighth Amendment deliberate indifference claim against Annucci, Fitzpatrick, Clinton, Sebouhian, the Movement Director, and the Movement Officer is deemed abandoned and is dismissed.

## G. Inadequate Dental Care: Defendants Dawson and Dental Director

The initial screening order concluded that, because Ruggiero's allegations did not indicate that either Defendant Dawson or Defendant Dental Director had actual knowledge of Ruggiero's need for dental care, he had not sufficiently alleged the subjective component of a deliberate indifference claim against them. Dkt. 5, at 39. Ruggiero does not name Dawson or the Dental Director in his amended complaint and makes no allegations against either of them. *See* Dkt. 7. Accordingly, Ruggiero's Eighth Amendment deliberate indifference claim against Dawson and the Dental Director is deemed abandoned and is dismissed.

## H. Conditions of Confinement: Cell-shield

The initial screening order concluded that Ruggiero had not adequately pled a conditions-of-confinement claim against Defendants Nowicki, White, Arnold, Williams, First John/Jane Doe Sergeant, Second John/Jane Doe Sergeant, and Third John/Jane Doe Sergeant. Dkt. 5 at 42–45. Ruggiero does not name these Defendants in his amended complaint and makes no allegations against them. *See*

9

Dkt. 7. The allegations in the amended complaint regarding the cell-shield are in support of Ruggiero's arguments that the conditions he experienced in SHU created a liberty interest in support of his due process claim. *See* Dkt. 7, at 16. Accordingly, Ruggiero's Eighth Amendment conditions-of-confinement claim against Defendants Nowicki, White, Arnold, Williams, First John/Jane Doe Sergeant, Second John/Jane Doe Sergeant, and Third John/Jane Doe Sergeant is deemed abandoned and dismissed.

## I.    Retaliation: Cell-shield

The initial screening order concluded that Ruggiero's allegations that Defendants wrongfully retaliated against him for filing grievances by ordering the use of a plexiglass cell shield on his cell was not sufficiently pled because his complaint did not include facts to plausibly allege the adverse action and causal connection elements of his retaliation claim. Dkt. 5, at 50–51. Ruggiero's amended complaint is organized by claim, with headings for each claim. *See* Dkt. 7. It does not include a section heading that identifies a retaliation claim—nor are there any facts in the amended complaint indicating an intention to assert a retaliation claim. *See id* at 4–21. Accordingly, Ruggiero's First Amendment retaliation claim is deemed abandoned and is dismissed.

## III.    CLAIMS ASSERTED IN THE AMENDED COMPLAINT

### A.    Fourth and Eighth Amendment Claims

#### 1.    Noeth

The initial screening order concluded that Ruggiero sufficiently alleged an unreasonable body-cavity search claim against the now voluntarily dismissed Defendants but concluded that Ruggiero did not sufficiently allege Noeth's personal involvement in the search. Dkt. 5, at 28. The Court described Ruggiero's allegation that Noeth "planned" the sexual assault conclusory. *Id.*[7]

As to Ruggiero's Eighth Amendment sexual assault claim, the initial screening order explained that the complaint failed to "allege any facts to suggest" that any Defendant "intended the contact to humiliate [Ruggiero] or elicit sexual gratification." Dkt. 5, at 24. The amended complaint does not allege much more. But liberally construed, Ruggiero's allegations—*e.g.*, he was rear-cuffed, placed "face down on the floor," had his clothes cut off, and had his anus "palpitated"— suggest that this event exceeded a routine strip search and are sufficient at this

---

[7] The initial screening order informed Ruggiero that confiscation of his clothing before he was confined to the strip cell did not state a claim because the Fourth Amendment does not "apply to seizures of inmate property by prison officials." Dkt. 5, at 28–29. In the amended complaint, Ruggiero reiterates that his clothing was seized, *see* Dkt. 7 ¶ 39, but the amended complaint still fails to state a claim, *see Hedrick v. Alfred*, No. 9:25-CV-0980 (BKS/PJE), 2025 WL 4669732, at *12 (N.D.N.Y. Sept. 25, 2025) ("The Supreme Court has held that 'the Fourth Amendment has no applicability to a prison cell' or the unlawful destruction of property when adequate post-deprivation remedies exist." (quoting *Hudson v. Palmer*, 468 U.S. 517, 528 n.8, 536 (1984)).

stage to state a colorable Eighth Amendment sexual assault claim. Dkt. 7 ¶¶ 33, 41.

As for Noeth's personal involvement in this incident, Ruggiero alleges that the "Unusual Incident Report" ("UIR") indicates that Noeth "planned the sexual assault and attempted sodomy[,] . . . the handcuffing behind the back, the placing of plaintiff face down on the floor, the cutting off of [his] clothes, the rolling [him] around on the floor naked, [and] the spreading of [his] butt cheeks." Dkt. 7, at 11. Accepting these allegations, as true, Ruggiero's Fourth and Eighth Amendment claims arising from this incident may proceed to service against Noeth.[8]

### 2.    Annucci, O'Gorman, Dill, and Russi

To the extent that the amended complaint asserts these claims against Annucci, O'Gorman, Dill, and Russi, their alleged nexus to the incident is limited to implementing a policy that required inmates who refused to complete Form 3152[9] to be referred to the mental health unit and transferred to a strip cell. Dkt. 7 ¶¶ 29– 35, 39–41. No allegations indicate their personal involvement in the alleged unreasonable search or sexual assault of Ruggiero. *See Tangreti v. Bachmann*, 983

---

[8] Permitting this, or any, claim to proceed to service does not immunize it from a dismissal or summary judgment motion. *See Jones v. Sullivan*, No. 9:19-CV-0025(BKS)(CFH), 2020 WL 5792989, at *5 (N.D.N.Y. Sept. 29, 2020) ("A court's initial screening under § 1915(e) and/or § 1915A does not preclude a later dismissal under Fed. R. Civ. P. 12(b)(6)." (citing *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 434–35 (N.D.N.Y. 2009))).

[9] Ruggiero refers to DOCCS Form 3152 as "Directive 3152," but DOCCS does not have a directive numbered 3152. DOCCS directives can be found at https://doccs.ny.gov/laws-rules-directives-listing (last visited June 26, 2026).

F.3d 609, 618 (2d Cir. 2020) ("[A] plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009))). These claims against Annucci, O'Gorman, Dill, and Russi, therefore, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim. Dkt. 7 ¶ 35.

Ruggiero also appears to allege an Eighth Amendment conditions of confinement claim against Annucci, O'Gorman, Dill, and Russi. Dkt. 7 ¶¶ 25–32. "Under the Eighth Amendment, States must not deprive prisoners of their 'basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Helling v. McKinney,* 509 U.S. 25, 32 (1993)).

To state an Eighth Amendment claim based on conditions of confinement, a plaintiff must allege (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "Ultimately, to establish the objective element of an Eight[h] Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency." *Phelps,* 308 F.3d at 185 (citing *Helling,* 509 U.S. at 35–46, and *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)).

13

To support this claim, Ruggiero relies on the deprivation of sheets, blankets, pillow, toilet paper, mail, and phone calls during his three-day confinement in the strip cell. Dkt. 7 ¶¶ 37, 40. But he identifies no deprivation of "'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." *See Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Rhodes*, 452 U.S. at 347); *see also Breer v. Gold*, No. 2:03-CV-326, 2009 WL 249648, at *6 (D. Vt. Feb. 3, 2009) ("Breer's complaint cites the conditions of his strip cell status, including the lack of a mattress, blanket, personal care items and writing materials. The lights were allegedly kept on 24 hours a day, and he was not allowed legal or personal mail. Even assuming the truth of these allegations, however, the conditions of his confinement did not rise to the level of an Eighth Amendment violation."); *Abascal v. Hilton*, No. 9:04CV1401(LEK/GHL), 2008 WL 268366, at *12 (N.D.N.Y. Jan. 30, 2008) ("Plaintiff does not allege that, while in the 'strip cell' for five days, he was deprived of 'the minimal civilized measure of life's necessities,' such as medical care, food, water, warmth or a toilet." (quoting *Farmer*, 511 U.S. at 834)), *aff'd sub nom. Abascal v. Jarkos*, 357 F. App'x 388 (2d Cir. 2009).

This claim, therefore, is dismissed. To the extent that this claim is a newly construed claim being addressed by the Court for first time, Ruggiero may seek leave to file a second amended complaint, if appropriate, through formal motion practice. *See Cato*, 2023 WL 8653857, at *9.

14

## B.    Right to Remain Silent

The initial screening order informed Ruggiero that to sufficiently plead a Fifth Amendment claim, he must allege that the questions posed to him by Defendants were akin to Defendants compelling his testimony in a proceeding where his answers could incriminate him in future criminal proceedings.  Dkt. 5, at 52–53.

In his amended complaint, Ruggiero alleges that his refusal to answer certain questions on Form 3152 resulted in his referral to the mental health unit and placement in the strip cell.  Dkt. 7, at 7–8.  He also alleges that, when the questions were posed to him, he did not know whether Defendants were "going to lodge false penal law offenses against [him]," as "[t]hat happens almost daily in these prisons." *Id.* at 10.  Ruggiero asserts that "it does not matter the nature of the questions that [were] posed to [him] from law enforcement," and that he has "a right to remain silent regardless of the nature of the questions." *Id.*

These allegations do not cure the deficiencies identified by the Court in its initial screening order.  Specifically, Ruggiero's allegations do not indicate how answering these questions:

"[d]o you have anything to live for or look forward to?";

"[d]o you want to hurt yourself?"; and

"[d]o you think you can cope with your SHU time?"

(Dkt. 7, at 7) could incriminate him in future criminal proceedings.

15

Accordingly, the amended complaint does not state a claim alleging a violation of Ruggiero's Fifth Amendment right to remain silent. This claim, therefore, is dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915(A)(b)(1).

## C.    Due Process Claim against Annucci, O'Gorman, Dill, and Russi

Ruggiero alleges that he was not receiving any mental health treatment and not displaying any suicidal behaviors. Dkt. 7 ¶ 31. He contends that his refusal to answer certain questions on Form 3152 resulted in an immediate referral to the mental health unit and for him to be housed in a "strip cell," in violation of his due process rights. *Id.* at 7–9.

At this stage, Ruggiero sufficiently alleged that he has a protected liberty interest in not being housed in a strip cell—even for several days—with conditions "10 times worse than the average Special Housing Unit conditions": "No sheets, no blanket, no pillow, [no] toilet paper[,]" [n]o books, no mental stimuli, nothing." *Id.* ¶ 37 (capitalization omitted). He also sufficiently alleged that he was arbitrarily placed into the strip cell merely because he did not complete the form, without any process for determining whether his mental condition required him to be placed in that cell.

Ruggiero attributes these actions to a policy enacted by Defendants Annucci, O'Gorman, Dill, and Russi. *Id.* ¶¶ 92, 93. At this stage, these claims may proceed to service against these Defendants.

16

### D.    Due Process Claim against Hale and Finnerty

In the initial screening order, the Court permitted Ruggiero's due process claim to proceed to service against Finnerty arising from a disciplinary hearing at which Ruggiero was handcuffed and prevented from accessing his papers, and Finnerty denied his request for employee assistance. Dkt. 5, at 48. Ruggiero reasserts that claim in the amended complaint. Dkt. 7 ¶¶ 42–56. He also adds what is separately captioned as a "due process violation claim against Defendant Hale, and . . . second . . . due process violation against Defendant Finnerty." *Id.* ¶¶ 61–63.

In that claim, Ruggiero alleges that Hale fabricated a misbehavior report and "conspired with . . . Finnerty" to give "false testimony" at a hearing. *Id* ¶ 61. Finnerty also "reference[d]" a non-existent audio tape to support her testimony at the hearing, "knowingly and willingly enter[ed] fraudulent evidence into the hearing record[,]" and was "biased to the point of turning the hearing into a sham." *Id.* ¶¶ 61–62.

Ruggiero alleges that he was issued two separate misbehavior reports, that he was found guilty of both, and that he ultimately received a reduced sentence of seven months. *Id.* ¶¶ 42, 63. It is not clear whether the conduct involving Hale was part of the same hearing before Finnerty that was addressed in the initial screening order or a separate hearing. Either way, Ruggiero's procedural due process claim may also proceed against Finnerty for this conduct. *See Francis v. Coughlin,* 891

F.2d 43, 48 (2d Cir. 1989) ("Inmates . . . enjoy a right to a hearing before a hearing officer who has not prejudged the inmate's guilt[.]").

The Court also will permit the due process claim against Hale for preparing the false misbehavior report and for her personal involvement in the hearing to proceed to service. *See Castillo v. Snedeker*, No. 21-CV-11109 (PMH), 2024 WL 3346021, at *2 (S.D.N.Y. July 8, 2024) (cognizable claim against correction officers for filing a false misbehavior report may be established where inmate "was disciplined without adequate procedural due process, as a result of the report" (citation modified)).

## CONCLUSION

Consistent with the Court's initial screening order and Ruggiero's voluntary dismissal of Defendants Olszewski, Asimenios, Reinhardt, Pezdek, and Greean— and in accordance with the Court's review of the amended complaint—the following claims will proceed to service: (1) excessive force claim against Rogers and Carrow; (2) deliberate indifference to serious medical needs claim against Hale; (3) deliberate indifference to serious dental needs claim against Defendant Tenbrick; (4) due process violation against Finnerty and Hale; (5) due process violation against Annucci, O'Gorman, Dill, and Russi; and (6) unreasonable search and sexual assault claims against Noeth. Ruggiero's Eighth Amendment conditions of confinement claim arising from the strip cell is dismissed without prejudice. All other remaining claims in the amended complaint are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## ORDER

IT HEREBY IS ORDERED that the following claims will proceed to service: (1) excessive force claim against Donald D. Rogers and Mark E. Carrow; (2) deliberate indifference to serious medical needs claim against Thea Hale; (3) deliberate indifference to serious dental needs claim against Richard Tenbrick; (4) due process violation against T.M. Finnerty and Thea Hale; (5) due process violation against Anthony J. Annucci, James A. O'Gorman, Danielle Dill, and Lena Russi; and (6) unreasonable search and sexual assault claims against Joseph H. Noeth; and it is further

ORDERED that Ruggiero's Eighth Amendment conditions of confinement claim arising from the strip cell is dismissed, without prejudice, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and it is further

ORDERED that all other claims in the amended complaint are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and it is further

ORDERED that the Clerk of Court shall cause the United States Marshals Service to serve copies of the summons, amended complaint, and this decision and order upon Defendants Donald D. Rogers, Mark E. Carrow, Thea Hale, Richard Tenbrick, T.M. Finnerty, Anthony J. Annucci, James A. O'Gorman, Danielle Dill, Lena Russi, and Jospeh H. Noeth (once the *Valentin* response is filed) without Ruggiero's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Ruggiero's favor; and it is further

ORDERED that the Clerk of Court is directed to terminate the following Defendants, who were named in the complaint from this action: Scott R. Pezdek, Spencer J. Greean, Alex J. Olszewski, Nicholas M. Asimenios, Joshua M. Reinhardt, C. Oak, Andrew R. Enser, James A. Coburn, Sean P. White, Kay G. Arnold, David D. Williams, Frank J. Nowicki, First John/Jane Doe, Second John/Jane Doe, Third John/Jane Doe, John/Jane Doe NYS Office of Mental Health Clinician for Attica C.F., Mr. Dawson, G. Sebouhian, William Fitzpatrick, J. Clinton, John/Jane Doe Director/Deputy Commissioner in Charge of Inmate Housing and Movement for DOCCS, John/Jane Doe Inmate Housing and Movement Officer for NYSDOCCS, and John/Jane Doe Dentist and Chief Dental Director for NYSDOCCS; and it is further

ORDERED that, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the Attorney General's Office is requested to ascertain the correct spelling and last known service address of Defendants Donald D. Rogers, Mark E. Carrow, Thea Hale, Richard Tenbrick, T.M. Finnerty, Anthony J. Annucci, James A. O'Gorman, Danielle Dill, Lena Russi, and Jospeh H. Noeth by **August 3, 2026**. The Attorney General need not undertake to defend or indemnify these individuals at this time. Rather, this order provides a means by which Ruggiero may name and properly serve these Defendants, as instructed by the Second Circuit in *Valentin*.

The Attorney General's Office shall produce the information specified above by mail (*Pro Se* Litigation Unit, United States District Court, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York 14202) by **August**

20

**3, 2026**. Upon receipt of this information, the Clerk of Court shall amend the caption of this action to reflect the full names of these Defendants; and it is further

ORDERED that the Clerk of Court shall forward a copy of this decision and order and the amended complaint by email to Christopher L. Boyd, Assistant Attorney General in Charge, Buffalo Regional Office, at Christopher.Boyd@ag.ny.gov; and it is further

ORDERED that, upon service, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants shall answer or respond to the remaining claims of the amended complaint; and it is further

ORDERED that, pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Ruggiero must notify the Court in writing if his address changes. Failure to do so may result in dismissal of the action with prejudice.

Dated:      July 1, 2026
            Buffalo, New York

                                    _____
                                    JOHN L. SINATRA, JR.
                                    UNITED STATES DISTRICT JUDGE